# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

SAM PILL,
MARILYN PILL, and
DAVID PILL, Individually and on Behalf of All Others Similarly Situated,

       Plaintiffs,

   v.

PENFORD CORPORATION, a Washington Corporation
THOMAS D. MALKOSKI,
PAUL H. HATFIELD,
EVAN BEHRENS,
WILLIAM E. BUCHHOLZ,
R. RANDOLPH DEVENING,
JOHN C. HUNTER III,
SALLY G. NARODICK,
EDWARD F. RYAN,
JAMES E. WARJONE,
MATTHEW M. ZELL,
JEFFREY T. COOK,
INGREDION INCORPORATED, a Delaware Corporation, and
PROSPECT SUB, INC., a Washington Corporation,

       Defendants.

## SHAREHOLDER CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Sam Pill, Marilyn Pill, and David Pill ("Plaintiffs"), by their undersigned attorneys, for this Class Action Complaint against Defendants, allege upon personal knowledge with respect to themselves, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is a stockholder class action brought by Plaintiffs on behalf of themselves and the public stockholders of Penford Corporation ("Penford" or the "Company") against Penford, Penford's Board of Directors (the "Board" or the "Individual Defendants"), Ingredion Incorporated ("Parent"), and Prospect Sub, Inc. ("Merger Sub," and together with Parent, "Ingredion"). This action arises from defendants' breaches of fiduciary duties in connection with the proposed acquisition (the "Proposed Transaction" or "Merger") of Penford by Ingredion.

2. Pursuant to the parties' agreement and plan of merger (the "Merger Agreement"), dated October 14, 2014, Ingredion intends to acquire all of the issued and outstanding shares of Penford common stock for $19.00 per share in cash (the "Merger Price") in a transaction valued at approximately $340 million. Under the terms of the Proposed Transaction, Merger Sub will merge with and into Penford, with Penford continuing as a wholly-owned subsidiary of Ingredion.

3. In connection with the Proposed Transaction, Penford and Ingredion entered into a Voting and Support Agreement (the "Voting Agreement") with one of the Company's largest shareholders, SEACOR Holdings Inc. ("SEACOR"). SEACOR is the beneficial owner of 1,186,600 Penford shares or approximately 9.34% of the outstanding Penford common stock and has one representative on the Board (defendant Behrens). As explained in further detail below, on August 19, 2014, SEACOR filed a proxy statement nominating four candidates for election to

1

the Board at the Company's annual meeting of shareholders expected to take place in early 2015. According to SEACOR, its four nominees had "direct, highly relevant industry experience necessary to bring a fresh and independent perspective to the Company" and would help "seize the growth opportunities" at Penford.

4. Despite its pending nomination of four candidates for election to the Board, SEACOR entered into the Voting Agreement pursuant to which it has agreed to vote its Penford shares in favor of the Proposed Transaction and against any competing offers. In addition, under the terms of the Voting Agreement, SEACOR has agreed to not solicit proxies from shareholders of the Company for the election of its nominees to the Board prior to the consummation of the Merger or the termination of the Merger Agreement.

5. In agreeing to the Merger at its current $19.00 per share price and in its current form, the Individual Defendants, as officers and/or directors of Penford, have breached their fiduciary duties to the Company's public shareholders. Specifically, the Board failed to take any reasonable steps to maximize shareholder value. They did not properly shop the Company prior to entering into the Merger Agreement, nor did they bargain for a "go-shop" after the Proposed Transaction was announced. Furthermore, they agreed to an unfair Merger Price that fails to adequately value the Company and its potential growth. Indeed, as noted by SEACOR in its August 19, 2014 proxy statement nominating four candidates to the Board, Penford has "compelling opportunities for accelerated growth and sustained earnings growth."

6. In addition, the Individual Defendants breached their fiduciary duties to the Company's shareholders by agreeing to certain onerous deal protection provisions in the Merger Agreement. In particular, the Board agreed to a strict "No Solicitation" provision, designed to prevent the Board from seeking any superior bids from other potential buyers. Furthermore, the

Board agreed to a "matching rights" provision that requires the Company to notify Ingredion of certain unsolicited competing offers, provide Ingredion with information regarding such offers, and negotiate in good faith with Ingredion regarding such offers.  In addition, the Board agreed to termination fee provision whereby Penford must pay Ingredion $7.6 million if the Company terminates the Proposed Transaction.  These provisions substantially and improperly limit the Board's ability to investigate and pursue superior proposals and virtually guarantee the consummation of the Proposed Transaction.

7. For these reasons, and as set forth in detail herein, Plaintiffs seek to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages from the Individual Defendants for their breaches of fiduciary duties and from Ingredion for aiding and abetting said breaches.

## JURISDICTION

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), (c), and (d).  Plaintiffs and the Defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  In fact, the overall value of the Proposed Transaction is approximately $340 million.  This action is not a collusive one to confer jurisdiction on this Court.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, *inter alia*, Penford's principal place of business is located in Colorado, and the Individual Defendants either reside in and/or regularly conduct business in this jurisdiction.  In addition, the acts and transactions complained of herein took place, entirely or in substantial part, in Colorado.

## THE PARTIES

10. Plaintiffs are, and have been continuously throughout all times relevant hereto,

the owners of Penford common stock.

11. Defendant Penford is a Washington corporation and maintains its principal executive offices at 7094 South Revere Parkway, Centennial, Colorado 80112. The Company develops, manufactures and markets specialty ingredient systems for a variety of food and industrial products. Penford operates six manufacturing facilities and three research and development centers in the United States. Penford's common stock is traded on the NASDAQ under the ticker symbol "PENX."

12. Defendant Thomas D. Malkoski ("Malkoski") has served as a director and as Chief Executive Officer ("CEO") of Penford since January 2002.

13. Defendant Paul H. Hatfield ("Hatfield") has served as a Penford director since October 1994 and as Chairman of the Board since January 2003.

14. Defendant Evan Behrens ("Behrens") has served as a Penford director since August 28, 2013. Since 2008, Behrens has been affiliated with SEACOR, a global provider of equipment and services supporting offshore oil and gas and marine transportation industries, and has been its Senior Vice President of Business Development since 2009.

15. Defendant William E. Buchholz ("Buchholz") has served as a Penford director since January 2003.

16. Defendant R. Randolph Devening ("Devening") has served as a Penford director since August 2003.

17. Defendant John C. Hunter III ("Hunter") has served as a Penford director since October 1998.

18. Defendant Sally G. Narodick ("Narodick") has served as a Penford director since August 1993.

4

19. Defendant Edward F. Ryan ("Ryan") has served as a Penford director since March 4, 2010.

20. Defendant James E. Warjone ("Warjone") has served as a Penford director since January 2001.

21. Defendant Matthew M. Zell ("Zell") has served as a Penford director since April 9, 2010.

22. Defendant Jeffrey T. Cook ("Cook") has served as a Penford director since 1998. Prior to that, Cook served as President of Penford from January 2002 to January 2003, President and CEO of Penford from September 1998 to January 2002, and Vice President and Chief Financial Officer from 1991 to August 1998. Cook first joined the Company in 1983.

23. Each of the Individual Defendants (listed in paragraphs 12-22 above) was a member of Penford's Board at all relevant times and participated in the decisions and conduct alleged herein. By reason of their positions, each Individual Defendant had, and continues to have, an obligation to determine whether the Proposed Transaction is in the best interest of the Company's shareholders and maximizes shareholder value.

24. The Individual Defendants, as officers and/or directors of Penford, have a fiduciary relationship with Plaintiffs and other public shareholders of Penford and owe them the highest obligations of loyalty, good faith, due care, and full and fair disclosure, as well as a duty to maximize shareholder value on the sale of the Company.

25. Defendant Parent is a Delaware corporation with its corporate headquarters located at 5 Westbrook Corporate Center, Westchester, Illinois 60154. Parent is a leading global ingredients solutions provider specializing in nature-based sweeteners, starches and nutrition ingredients. With customers in more than 100 countries, Parent serves approximately 60 diverse

sectors in food, beverage, brewing, pharmaceuticals and other industries. Parent's common stock is traded on the New York Stock Exchange under the ticker symbol "INGR."

26. Defendant Merger Sub is a Washington corporation and a wholly-owned subsidiary of Parent. Merger Sub was created for the sole purpose of facilitating the Proposed Transaction.

27. Penford, the Individual Defendants, and Ingredion are collectively referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

28. Plaintiffs bring this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the other public stockholders of Penford (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

29. This action is properly maintainable as a class action.

30. The Class is so numerous that joinder of all members is impracticable. As of July 2, 2014, there were approximately 12,705,538 shares of Penford common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

31. Questions of law and fact are common to the Class, including, *inter alia*, the following:

(a) Whether Defendants have breached their fiduciary duties to Plaintiffs and the other members of the Class in connection with the Proposed Transaction;

(b) Whether the Individual Defendants have breached their fiduciary duties to secure and obtain the best reasonable price under the circumstances for the sale of Penford;

(c) Whether the Merger Price is unfair and inadequate;

(d) Whether Plaintiffs and the other members of the Class would be

irreparably harmed were the transaction complained of herein consummated;

(e) Whether the members of the Class have sustained damages, and if so, what is the proper measure of damages; and

(f) Whether Ingredion has aided and abetted the Individual Defendants' breaches of fiduciary duties.

32. Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature. Plaintiffs' claims are typical of the claims of the other members of the Class and Plaintiffs have the same interests as the other members of the Class. Accordingly, Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

33. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

34. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company

35. Penford is a developer, manufacturer and marketer of specialty natural-based ingredient systems for food and industrial applications, including fuel grade ethanol. The Company's strategically-located manufacturing facilities in the United States provide it with

7

broad geographic coverage of its target markets. Penford has significant research and development capabilities, which are used in understanding the complex chemistry of carbohydrate-based materials and in developing applications to address customer needs.

36.     Penford operates in two business segments, Industrial Ingredients and Food Ingredients. Each of these business segments utilizes the Company's carbohydrate chemistry expertise to develop starch-based ingredients for value-added applications that improve the quality and performance of customers' products.

37.     Industrial Ingredients, which in fiscal years 2013, 2013 and 2011 generated approximately 76%, 76% and 78%, respectively, of Penford's revenue, is a supplier of chemically modified specialty starches to the paper and packaging industries. In addition, the Industrial Ingredients segment produces food grade corn starch for sale by the Company's Food Ingredients business. Furthermore, the Industrial Ingredients segment produces and sells fuel grade ethanol from its facility in Cedar Rapids, Iowa.

38.     Food Ingredients, which in fiscal years 2013, 2012 and 2011 generated approximately 24%, 24%, and 22%, respectively of Penford's revenue, is a developer and manufacturer of specialty starches and dextrins to the food manufacturing and food service industries. Specialty starches are used in coatings to provide crispness, improve taste and texture, and increase product life for products sold in restaurants. Starch products are also used to reduce fat levels, increase fiber content, modify texture, and improve color and consistency in a variety of foods such as canned products, sauces, whole and processed meats, dry powdered mixes and bakery products.

    **B.**  **SEACOR Nominates Representatives to the Board**

39.     On July 2, 2013, SEACOR delivered a letter to the Board requesting that a SEACOR representative be appointed to the Board. According to the letter, SEACOR requested

that the Board consider appointing a SEACOR representative to the Board because it believed a SEACOR representative would "bring substantial experience and expertise to the Board that will be helpful in addressing the Company's challenges and seizing its opportunities"

40. In response to this letter, on August 28, 2013, the Board increased the size of the Board from ten to eleven directors and elected defendant Behrens, a Senior Vice President of Business Development and representative of SEACOR, to serve on the Board, effective immediately. Defendant Behrens was eventually elected to a three-year term by Penford shareholders at the Company's 2014 annual meeting of shareholders on January 30, 2014.

41. On July 11, 2014, approximately eleven months after defendant Behrens was elected to the Board, SEACOR informed the Board that it planned to nominate four additional candidates for election as directors of Penford at the Company's next annual meeting of shareholders. SEACOR indicated that it planned to submit its nominees to the Company on or before August 22, 2014.

42. On July 14, 2014, the Company responded to SEACOR's announcement by stating that it expected "to follow its established procedures for the review of candidates" and would "evaluate the qualifications and suitability of any nominees and make recommendations to the full Board."

43. On August 19, 2014, SEACOR filed a proxy statement on Schedule 14A with the United States Securities and Exchange Commission ("SEC"). In this filing, SEACOR nominated four candidates for election to the Board at the Company's annual meeting of shareholders expected to take place in early 2015. SEACOR explained that the election of its four director candidates was necessary because Penford "has continually missed the opportunity to move from commodity industrial ingredients to higher margin bio-products and specialty

ingredients" and has experienced "several years of sub-optimal performance." Furthermore, SEACOR noted that the Company's stock price was lower than it was in 2003, an 11-year period during which eight of the eleven current directors had remained in place. Moreover, SEACOR stated that "despite considerable efforts to influence the Company to successfully execute its strategic plans," the Company's "continued poor performance necessitated a change." Finally, SEACOR argued that Penford's "poor record" was due to "weak corporate governance and ineffectual oversight of management by the Board" and that the "entrenched group has not provided Penford with adequate strategic direction and oversight, resulting in a failure to capitalize on growth opportunities." According to SEACOR, its nominees had "direct, highly relevant industry experience necessary to bring a fresh and independent perspective to the Company, and [were] well suited to serve as a catalyst for much needed change at Penford." While SEACOR indicated that it was not seeking to take control of Penford, it believed that there were "compelling opportunities for accelerated growth and sustained earnings growth at Penford" and that its nominees would help "seize the growth opportunities."

        **C.**    **The Company's Improving Financial Results**

44.    The Company has reported improving financial results in recent years. For example, on November 14, 2013, Penford reported its financial results for the fiscal year 2013. The issued press release indicated that the Company's net income for fiscal year 2013 increased by $13.6 million to $4.0 million from a net loss of $9.6 million in the prior year. Furthermore, the Company's annual sales for the fiscal year 2013 increased by 8% over the prior year to $467.3 million, driven primarily by new customer wins and a more favorable product mix. Finally, the Company reported that cash flow from operations for fiscal year 2013 improved by $22.1 million over the prior year based on higher earnings, lower corn inventories and reduced interest payments on the Company's outstanding credit facility.

45.     On January 9, 2014, Penford reported its financial results for the first quarter of fiscal year 2014. The issued press release reported the Company's cash flow from operations for the first quarter of fiscal year 2014 increased by 25% over the same quarter in fiscal year 2013 to $8.7 million. Furthermore, the Company's last twelve month sales increased 3% to $458 million and EBIDTA rose 18% to $20.5 million over the prior twelve months.

46.     On March 5, 2014, Penford announced that it had entered into an agreement to acquire Gum Technology, a privately held gum and hydrocolloids distribution, blending and services company. According defendant Malkoski, the transaction was designed to broaden Penford's portfolio and open new segments to the Company:

> Gum Technology's product line and reputation for outstanding customer service will broaden Penford's portfolio of functional and specialty ingredient systems for existing customers and open new segments to the company. We see opportunities in food and industrial bio-products for high value, specialized products from the combination of our product lines and customer relationships. This acquisition fits well with our strategy of accelerating the pace of growth of the company's specialty businesses.

47.     On April 9, 2014, Penford reported its financial results for the second quarter of fiscal year 2014. The issued press release reported the Company's operating income for the second quarter of fiscal year 2014 rose 15% over the same quarter in fiscal year 2013 to $2.9 million. Furthermore, the Company's gross margin in the second quarter of fiscal year 2014 increased 11% over the same quarter in fiscal year 2013 to $12.2 million.

48.     On July 7, 2014, Penford reported its financial results for the third quarter of fiscal year 2014. The issued press release reported that the Company's operating income for the third quarter of fiscal year 2014 increased by 15% from the same quarter in fiscal year 2013 to $4.9 million. Furthermore, the Company's gross margin for the third quarter of fiscal year 2014 increased by 12% over the same quarter in fiscal year 2013 to $14.9 million.

49. On August 4, 2014, Penford announced that it had closed on new $170 million credit facilities, replacing the Company's prior revolving credit agreement. The facilities consisted of a $145 million 5-year revolving credit agreement and a $25 million 6-year delayed draw term loan. According to defendant Malkoski, the Company entered into the new credit facilities in order to implement its strategy to build shareholder value:

> These new credit facilities will provide us with increased capacity, greater flexibility and lower costs in implementing our strategic programs to build shareholder value. We are pleased that the participating lenders have recognized the strength of our current business model and the Company's attractive prospects for continued growth. We intend to use these new facilities to fund additional capital investments and acquisitions that will expand our specialty businesses in food ingredients and high value industrial products.

### D. The Proposed Transaction

50. On October 15, 2014, Penford issued a press release (the "Press Release") announcing that it had entered into a definitive agreement with Ingredion, pursuant to which Ingredion will acquire all of the issued and outstanding stock of Penford for $19.00 per share in cash. The Press Release stated in relevant part:

> CENTENNIAL, CO, Oct. 15, 2014 – Penford Corporation (Nasdaq: PENX), a leader in ingredient systems for food and industrial markets, today announced that it has entered into a definitive merger agreement with Ingredion Incorporated (NYSE: INGR) under which Ingredion will acquire all of the outstanding shares of Penford for $19.00 in cash per share. The transaction is valued at approximately $340 million in the aggregate and has been approved by the Boards of Directors of both companies.
>
> "This is a tremendous opportunity to combine Penford's and Ingredion's complementary product portfolios and capabilities," said Thomas Malkoski, President and CEO of Penford. "Ingredion is a recognized innovator in food ingredients and sustainable green solutions. The expanded portfolio and geographic reach of the combined companies should enable new and exciting solutions for their customers and ours."
>
> "We are grateful to our talented employees who have steadfastly focused on executing our strategy. We believe this exciting next step for Penford underscores our success and progress toward our long-term goals," said Malkoski.

> "After a thorough process and careful consideration, the Penford Board and management team believe this transaction will maximize value for Penford shareholders," said Paul Hatfield, Chairman of the Penford Board of Directors. "Ingredion is a market-leading ingredient solutions provider with a strong balance sheet and the ideal partner for Penford and all of our stakeholders. We look forward to working closely with the Ingredion team to close this transaction."
>
> Ilene Gordon, Ingredion Chairman and CEO, said, "This acquisition expands our higher-value specialty portfolio, establishes manufacturing of specialty potato starches in North America, and builds our presence in nature-based hydrocolloid ingredients. Penford's range of products addresses growing consumer trends, including nutrition, gluten-free, food textures, and sustainable green solutions."
>
> SEACOR Holdings Inc., the owner of approximately 9.34% of Penford's outstanding common stock, has indicated that it supports the transaction. Accordingly, SEACOR entered into a voting agreement in which SEACOR has agreed, among other things, to vote the shares it owns to approve the merger agreement and not to solicit proxies from shareholders of the Company for the election of SEACOR's nominees as directors of Penford prior to termination of the merger agreement or the occurrence of certain other events.
>
> The transaction could close as early as the end of the year and is subject to Penford shareholder and regulatory approvals, as well as other customary closing conditions.

51. The same day, the Company filed the Merger Agreement with the SEC. Under the terms of the Merger Agreement, Ingredion will acquire all of the outstanding shares of common stock of the Company for $19.00 per share, with Penford continuing as a wholly-owned subsidiary of Parent. The Merger is conditioned upon the approval of a majority of all of the Company's shareholders.

52. As indicated above, in connection with the Merger, Penford, Ingredion and SEACOR have entered into the Voting Agreement. SEACOR is one of the Company's largest shareholders and appointed defendant Behrens to the Board. Under the terms of the Voting Agreement, SEACOR has agreed to vote all of its Penford common stock in favor of the Proposed Transaction and against any competing offers. The shares secured by the Voting Agreement represent approximately 9.34% of Penford's outstanding common stock. Therefore,

because the Voting Agreement has already locked up 9.34% of Penford's common stock in favor of the Proposed Transaction, Defendants need only secure the vote of approximately 40.67% of Penford common stock in order to consummate the Merger.

53. Under the terms of the Voting Agreement, SEACOR has also agreed that, prior to the consummation of the Merger or the termination of the Merger Agreement, it will not call an annual or special meeting for the election of Penford directors but that, in the event that the Merger Agreement is terminated, it will call an annual or special meeting for the election of Penford directors to be held on a date not earlier than 60 days nor later than 90 days after the date of termination of the Merger Agreement. As indicated above, on August 19, 2014, SEACOR nominated four candidates for election to the Board at the Company's next annual meeting of shareholders. According to SEACOR, its four nominees would "serve as a catalyst for much needed change at Penford" and would help Penford seize "growth opportunities." Presumably, if the Merger Agreement was terminated, these four candidates would stand for election to the Board at any annual or special meeting called by SEACOR.

### E. The Unfair Deal Protections

54. The Merger Agreement contains several unreasonable and preclusive deal protection devices designed to ensure Ingredion's acquisition of Penford at an unfairly low Merger Price. For example, Section 5.3 of the Merger Agreement contains a "No Solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

55. Moreover, pursuant to Section 5.3(c) of the Merger Agreement, the Company must advise Ingredion, within twenty-four hours, of any proposals or inquiries received from other parties, including, *inter alia*, the material terms and conditions of the proposal and the

identity of the party making the proposal. In addition, Section 5.3(e) of the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances. Moreover, Section 5.3(f) of the Merger Agreement grants Ingredion a "matching right" with respect to any "Superior Proposal" made to the Company.

56. Finally, Section 7.3 of the Merger Agreement provides for a "Termination Fee" of $7,628,067, payable by the Company to Ingredion if the Individual Defendants cause the Company to terminate the Merger Agreement pursuant to the lawful exercise of their fiduciary duties. Section 7.3 of the Merger Agreement also provides for a "Shareholder Termination Payment" of $2 million, payable by the Company to Ingredion if Penford shareholders fail to approve the Merger.

57. The matching rights advantage that Ingredion has in its access to, and ability to match, alternate bidders' offers combined with the steep financial burden by way of the termination fee placed on any alternate bid will likely result in no further bids for the Company. Even in the unlikely event that an unsolicited offer does arise, the terms of the Merger Agreement allow the Board only a narrow ability to respond to it. In tandem, the deal protection devices created by the Merger Agreement will quell any chance of shareholders receiving a higher bid for the Company than that offered in the Proposed Transaction. These deal protections, along with Voting Agreement that requires Ingredion to vote for the Proposed Transaction and against any alternative proposal, are acting to the detriment of the public shareholders in breach of the Individual Defendants' fiduciary duties.

**F.     Inadequate Consideration**

58. The Merger Price offered in the Proposed Transaction is grossly inadequate and

does not represent the Company's actual intrinsic value or account for its positive future outlook.

59.  Among other things, the Merger Price is inadequate in light of the Company's recent financial performance. As noted above, the Company reported that its net income for fiscal year 2013 increased by $13.6 million to $4.0 million from a net loss of $9.6 million in the prior year. Furthermore, the Company reported that its operating income and gross margin has increased substantially in the second and third quarters of fiscal year 2014.

60.  Furthermore, as indicated above, on August 19, 2014, SEACOR announced that it was nominating four candidates to be elected to the Board at the Company's next meeting of shareholders. SEACOR announced it was doing so because it believed that there were "compelling opportunities for accelerated growth and sustained earnings growth at Penford" and that its nominees would help "seize the growth opportunities." By agreeing to the Proposed Transaction before the Company has had any opportunity to seize these "compelling opportunities" for growth, the Board has prematurely agreed to a Merger Price that significantly undervalues the Company and its potential future growth. Ingredion is attempting to acquire Penford for unfair and inadequate at a time when the Company's stock price does not reflect the full intrinsic value of the Company.

61.  Finally, the Merger Price fails to adequately compensate the Company's stockholders for the significant synergies created by the Merger from the resulting combination of complementary product portfolios. According to Penford document titled "Talking Points (For Managers)" filed with the SEC on Schedule 14A on October 15, 2014, the "combination of . . . two leading specialty companies with complementary product portfolios creates a stronger organization with greater growth opportunities." Furthermore, in the Press Release announcing the Proposed Transaction, Ilene Gordon, Parent's CEO, noted that the "acquisition expands

16

[Ingredion's] higher-value specialty portfolio, establishes manufacturing of specialty potato starches in North America, and builds [Ingredion's] presence in nature-based hydrocolloid ingredients."

62. The Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings. As a result, Defendants have breached their fiduciary duties they owe to the Company's public stockholders because the stockholders will not receive adequate or fair value for their Penford common stock in the Proposed Transaction.

**COUNT I**

**(BREACH OF FIDUCIARY DUTY AGAINST THE INDIVIDUAL DEFENDANTS)**

63. Plaintiffs repeat and reallege the preceding allegations as if fully set forth herein.

64. As alleged herein, the Individual Defendants have breached their fiduciary duties to Penford's shareholders by failing to take steps to obtain the highest value available for Penford in the marketplace and, in fact, agreeing to onerous deal protection devices to decrease the chances of obtaining the highest value available for Penford in the marketplace.

65. As a result of the Individual Defendants' breaches, Plaintiffs and the Class will suffer irreparable injury because Penford's shareholders will not receive fair value for their equity interests in the Company.

66. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties and will attempt to consummate the Merger, to the irreparable harm of the Class.

67. Plaintiffs and the members of the Class have no adequate remedy at law.

## COUNT II

### (FOR AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES AGAINST PARENT AND MERGER SUB)

68. Plaintiffs repeat and reallege the preceding allegations as if fully set forth herein.

69. As alleged herein, Parent and Merger Sub are well aware that the Individual Defendants have not sought to obtain the best available transaction for Penford's public shareholders. Moreover, Parent and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duties, by demanding deal protection measures, including the high termination fee and the "No Solicitation" provision, in the Merger Agreement. Parent and Merger Sub also offered a Merger Price that did not represent the true intrinsic value of Penford, and thereby facilitated the Individual Defendants' breaches of fiduciary duty in the sale of the Company. In exchange for the inadequate Merger Price, Parent and Merger Sub stand to receive substantial revenues and synergies from the Company's specialty ingredient systems.

70. As a result, Plaintiffs and the Class members are being irreparably harmed.

71. Plaintiffs and the members of the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the other members of the Class, demand judgment against Defendants as follows:

A. Declaring that this action is properly maintainable as a class action and certifying Plaintiffs as the representatives of the Class;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event that the Proposed Transaction is consummated, rescinding it and setting it aside, or awarding rescissionary damages to the Class;

   D. Awarding Plaintiffs the costs and disbursements of this action and a reasonable allowances for fees and expenses of Plaintiffs' counsel and experts; and

   E. Granting Plaintiffs and the Class such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: October 21, 2014    DYER & BERENS LLP

            s/ Jeffrey A. Berens_____
          Robert J. Dyer III
          Jeffrey A. Berens
          303 East 17th Avenue, Suite 810
          Denver, CO  80203
          Telephone: (303) 861-1764
          FAX: (303) 395-0393
          Email: bob@dyerberens.com
          Email: jeff@dyerberens.com

          WOLF POPPER LLP
          Carl L. Stine
          Roy Herrera Jr.
          845 Third Avenue
          New York, New York 10022
          Telephone: (212) 759-4600
          FAX:  (212) 486-2093
          Email: cstine@wolfpopper.com
          Email: rherrera@wolfpopper.com

          *Attorneys for Plaintiffs*